IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2, 2019 Session

## SIMMONS BANK v. VASTLAND DEVELOPMENT PARTNERSHIP

**Appeal from the Chancery Court for Davidson County**
**No. 16-0864-IV     Russell T. Perkins, Chancellor**

_____

### No. M2018-00347-COA-R3-CV

_____

This appeal arises from a commercial lease dispute. The trial court summarily ruled that Simmons Bank, which acquired the tenant originally named in the lease in a merger, had the right to exercise a renewal option. The appellant landlord contends this was error because "(1) the plain language of the lease expressly indicated the option could only be exercised by the tenant originally named in the lease and (2) two events of default occurred [as a result of the merger] which precluded the exercise of the option under the plain terms of the lease." The alleged events of default were that (1) the original tenant failed to "maintain its legal existence," and (2) the original tenant transferred its interest to Simmons Bank by operation of law. We have determined that regardless of whether the lease was transferred to Simmons Bank by merger pursuant to Tenn. Code Ann. § 48-21-108(a)(2) "without reversion or impairment," the parties agreed to restrict any transfer of the right to renew the lease to one entity, First State Bank, "the Tenant originally named" in the lease. Accordingly, and relying on the legal principle that a statute shall not be applied to construe a contract when the parties to the contract express a contrary intention, the agreed-upon renewal restriction in the lease controls. As a consequence, Simmons Bank does not have the right to exercise the renewal option. Therefore, we reverse the grant of summary judgment to Simmons Bank and remand this case to the trial court with instructions to enter summary judgment in favor of the landlord.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and ANDY D. BENNETT, J., joined.

Jeffrey H. Gibson and Hannah E. Webber, Nashville, Tennessee, for the appellant, Vastland Development Partnership.

Samuel T. Bowman and Sarah D. Murray, Nashville, Tennessee, for the appellee, Simmons Bank.

## OPINION

In 2003, First State Bank entered into an agreement to lease space within a building owned by Vastland Development Partnership ("Vastland") at 1720 West End Avenue in Nashville (the "Lease"). The Lease specifically defined "Tenant" as "First State Bank." Addendum Two of the Lease granted First State Bank a renewal option under the following conditions:

> **Provided** that as of the time of the giving of the First Extension Notice and the Commencement Date of the First Extension Term, (x) **Tenant is the Tenant originally named herein**, (y) Tenant actually occupies all of the Premises initially demised under this Lease and any space added to the Premises, and (z) no Event of Default exists or would exist but for the passage of time or the giving of notice, or both; **then Tenant shall have the right to extend the Lease Term** for an additional term of five (5) years (such additional term is hereinafter called the "First Extension Term") . . . . Adhering to same above, the Tenant shall have the right to extend the Lease term for an additional term of two (2) five (5) year options, hereinafter called the "Second Extension Term" and the "Third Extension Term."

(Emphasis added). The Lease also provided that First State Bank would be in default if it was "dissolved or otherwise fail[ed] to maintain its legal existence," or upon "any assignment, subleasing or other transfer of Tenant's interest . . . except as otherwise permitted in [the] Lease."[1]

In May 2011, First State Bank exercised its first option to renew the Lease, and the Lease was extended to August 17, 2016. In September 2015, before the end of the first extension term, First State Bank merged into Simmons Bank. As a consequence of the merger, Simmons Bank was the surviving entity, and First State Bank no longer existed separately. *See* Tenn. Code Ann. § 48-21-108(a)(1).

After the merger, Simmons Bank continued to occupy the property pursuant to the Lease. On January 19, 2016, Simmons Bank sent notice to Vastland that it intended to exercise the second option to renew the Lease. Vastland responded:

---

[1] The tenant was not permitted to assign the Lease or sublease the premises without prior written consent of the landlord.

[T]he Landlord disagrees that Simmons Bank has a valid contractual option to renew the Lease. Per Addendum Two of the original Lease . . . the tenant option to renew is subject to among other factors "Tenant is the Tenant originally named herein." The original Tenant was First State Bank which is no longer the current Tenant. Therefore, the tenant's option to extend the lease is invalid.

Simmons Bank filed an action in Davidson County Chancery Court on August 5, 2016, seeking injunctive relief and a declaratory judgment that Simmons Bank could exercise the second renewal option under the Lease. Vastland filed an answer and counterclaim for declaratory and injunctive relief and unlawful detainer.[2]

After the parties engaged in written discovery, they filed cross-motions for summary judgment. In its motion for summary judgment, Vastland argued that Simmons Bank was not entitled to exercise the renewal option because Simmons Bank was not the original tenant named in the Lease. However, should the court find that Simmons Bank met the "original tenant" condition for renewal, Vastland argued that Simmons Bank could not exercise the renewal option because at least two events of default occurred prior to renewal—(1) the original tenant merged into Simmons Bank and failed to "maintain its legal existence," and (2) the original tenant transferred its interest to Simmons Bank by operation of law.

In its cross motion for summary judgment, Simmons Bank relied on Tenn. Code Ann. § 48-21-108, which provides in pertinent part:

(a) When a merger becomes effective:

(1) The corporation or eligible entity that is designated in the plan of merger as an entity surviving the merger shall survive, and the separate existence of every other corporation or eligible entity that is a party to the merger shall cease;

(2) All property owned by, and every contract right possessed by, each corporation or eligible entity that is merged into the survivor shall be vested in the survivor without reversion or impairment[.]

---

[2] Before Vastland filed its answer and counterclaim, the parties agreed to a preliminary injunction allowing Simmons Bank to remain in possession until the dispute was resolved.

*Id.* § 108(a)(1)–(2).[3]

Based on the foregoing statute, Simmons Bank argued that it acquired the contract rights of First State Bank "without reversion or impairment," and accordingly, upon First State Bank's merger into Simmons Bank, Simmons Bank became the original tenant named in the Lease. Simmons Bank also contended that while First State Bank lost its "separate existence" following the merger, it continued to exist as a part of Simmons Bank. Therefore, the "legal existence" default provision did not apply.

After a hearing on January 19, 2018, the trial court found in favor of Simmons Bank, ruling:

> The Court determines that Simmons Bank has the better argument. When the merger occurred, all of First State Bank's contract rights under the Lease were automatically, by operation of law, vested in the surviving corporation, Simmons Bank. First State Bank did not cease to exist, even though its separate legal existence ceased. First State Bank continues to exist, not separately, but as part of Simmons Bank. Consequently, there is no breach under the "legal existence" default provision in the Lease. Consequently, Simmons Bank, by operation of the Tennessee merger statute, as amended in 2013, is the automatically vested Tenant originally named in the Lease.
>
> Additionally, although the merger effected a transfer by operation of law, the merger statute expressly provides for an automatic vesting of pre-existing contract rights in the surviving corporation, Simmons Bank. This declaration of public policy and statement of substantive law should not be rendered surplusage by the general language of the Lease, particularly where as here, the result does not appear to disrupt any expressed intention of the parties regarding merger in the language of the Lease.

Vastland appealed.

### STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955

---

[3] The phrase "and every contract right possessed by" was added in 2013.

S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

**ANALYSIS**

The dispositive issue on appeal is whether Simmons Bank has the right to exercise the renewal option in the Lease. Vastland insists Simmons Bank does not have the contractual right to exercise the renewal option in the Lease it acquired from First State Bank because the only party that has the right to exercise the renewal option is "the Tenant originally named herein," and it is undisputed that the "originally named" tenant in the lease is "First State Bank." Simmons Bank counters relying on Tenn. Code Ann. § 48-21-108, which affords Simmons Bank "every contract right possessed by" First State Bank "without reversion or impairment." Based on this statute, Simmons Bank insists it is substituted for First State Bank as the original tenant named in the Lease by operation of law.

The cardinal rule of contract construction is that the court must give effect to "the intent of the contracting parties at the time of executing the agreement." *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). To ascertain that intent, we look to the plain and ordinary meaning of the contractual language. *Id*. at 889–90. "[O]ne of the bedrocks of Tennessee law is that our courts are without power to make another and different contract from the one executed by the parties themselves." *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017). And, "[i]n the absence of fraud or mistake, a contract must be interpreted and enforced as written*." St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn. Ct. App. 1986).

"This determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin*, 78 S.W.3d at 890.

As a rule of construction, applicable statutes that "subsist at the time and place of the making of a contract and where it is to be performed become part of the contract— even where silent on this point—as fully as though expressly referred to or incorporated into the instrument." 21 Steven W. Feldman, Tennessee Practice Series Contract Law and Practice § 8:23, Westlaw (database updated May 2019); 11 Richard A. Lord, *Williston on*

*Contracts*, § 30:19 (4th ed. 1999) [hereinafter *Williston*]. However, with a few exceptions, a statute is not applied to construe the contract when the parties to the contract express a contrary intention. Feldman, *supra*; *Williston*, *supra*. For example, "[i]n the context of a limited partnership, the written contract of the parties controls" unless "the express contract does not cover situations or questions which arise." *Barton v. Gilleland*, No. E2004-01369-COA-R3-CV, 2005 WL 729174, at *6 (Tenn. Ct. App. Mar. 30, 2005) (citing *Young v. Cooper*, 203 S.W.2d 376, 385 (Tenn. Ct. App. 1947)). Only when questions arise will the statutes in the Tennessee Revised Uniform Limited Partnership Act apply to construe the contract. *Id*. Despite this general rule, courts will not enforce contractual provisions that violate the public policy of this state as embodied in our Constitution, statutes, common law, and prior court decisions. *Baugh v. Novak*, 340 S.W.3d 372, 384 (Tenn. 2011). Here, it is undisputed that the lease provision at issue does not violate public policy.

The Lease does not state that "Tenant" may renew the Lease. To the contrary, the Lease contains a restrictive provision that expressly restricts the right of renewal to the "Tenant originally named herein," which is a clear contractual declaration that the right of renewal was restricted to "First State Bank," not its successors or assigns. The significance of this restriction becomes more apparent when considered along with Paragraph 23(v) of the Lease, which defines an Event of Default that constitutes a forfeiture of the right of renewal to include when "there shall occur any assignment . . . or other transfer of Tenant's interest . . . except as otherwise permitted in this Lease." By reading these provisions *in pari materia*, it is readily apparent that the parties agreed that the right to exercise the renewal provision would be restricted to First State Bank, the tenant originally named in the Lease, not a successor tenant, and that the right of renewal could not be transferred. *See Powell v. Clark*, 487 S.W.3d 528, 536 (Tenn. Ct. App. 2015) ("[U]nder well-settled contract interpretation principles, we must read this [contractual provision] *in pari materia* with the entire agreement.").

Courts must give effect to "the intent of the contracting parties at the time of executing the agreement," and we do that by looking to the plain and ordinary meaning of the contractual language. *Planters Gin*, 78 S.W.3d at 889–90. Moreover, "courts are without power to make another and different contract from the one executed by the parties." *Eberbach*, 535 S.W.3d at 478. The Lease restricts the right of renewal to First State Bank, which is both a clear and restrictive declaration, as distinguished from the more common reference to "tenant." There being no allegations of fraud or mistake, the Lease must be "enforced as written*." St. Paul Surplus*, 725 S.W.2d at 951.

The foregoing notwithstanding, Simmons Bank contends the Lease was transferred to Simmons Bank by operation of law pursuant to Tenn. Code Ann. § 48-21-108(a)(2); thus, it possesses the contract right possessed by First State Bank at the time of the merger. *See* Tenn. Code Ann. § 48-21-108(a)(2) ("All property owned by, and every contract right possessed by, each corporation or eligible entity that is merged into the

survivor shall be vested in the survivor without reversion or impairment[.]").[4] This contention, however, fails to appreciate the significance of the parties' agreement to restrict the right to renew the Lease to the "Tenant **originally named herein**." (Emphasis added). This is significant because, with a few exceptions that are not applicable here, a statute is not applied to construe the contract when the parties to the contract express a contrary intention.[5] *See* Feldman, *supra*; *see also Williston*, *supra*. Therefore, regardless of whether the Lease was transferred to Simmons Bank by merger pursuant to Tenn. Code Ann. § 48-21-108(a)(2) "without reversion or impairment," the parties agreed to restrict the right to renew the Lease to one entity, First State Bank, "the Tenant originally named" in the Lease. As a consequence, Simmons Bank does not have the right to exercise the renewal option.

For these reasons, Vastland, not Simmons Bank, was entitled to judgment as a matter of law. Accordingly, the grant of summary judgment in favor of Simmons Bank is reversed, and this matter is remanded with instructions for the trial court to enter summary judgment in favor of Vastland.

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Simmons Bank.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[4] Simmons Bank contends Tenn. Code Ann. § 48-21-108(a)(2) was incorporated into the Lease by operation of law and, therefore, governs the rights of the parties. We note, however, that one of the key phrases upon which it relies, "and every contract right possessed by," was added in 2013. Prior to the 2013 amendment, the statute read: "All property owned by each corporation or limited partnership that is a party to the merger shall be vested in the surviving corporation or limited partnership without reversion or impairment." *See* Act of April 14, 1994, Tenn. Pub. Acts, ch. 776, § 41. The parties entered into the original Lease on March 12, 2003. Therefore, the 2013 version did not "subsist at the time and place of the making of the contract" and was thus inapplicable to the Lease's construction. *See* Feldman, *supra*.

[5] One exception to this rule applies to insurance contracts. "[S]tatutes that apply to an insurance policy not only become a part of the contract, but also 'supersede anything in the policy repugnant to the provisions of the statute.'" *Kiser v. Wolfe*, 353 S.W.3d 741, 747 (Tenn. 2001) (quoting *Hermitage Health & Life Ins. Co. v. Cagle*, 420 S.W.2d 591, 594 (1967)).